PEOPLE v KNIGHT

Docket No. 54393. Submitted October 8, 1982, at Detroit.—Decided January 20, 1983.

Chare A. Knight was convicted of second-degree murder and conspiracy to commit murder in the second degree, Wayne Circuit Court, John M. Wise, J. He was acquitted of felony-firearm and appeals, alleging numerous errors. *Held:*

1. The defendant's conviction for conspiracy to commit second-degree murder was improper. The crime of conspiracy to commit second-degree murder cannot logically exist.

2. The defendant's conviction of second-degree murder was not inconsistent with his acquittal on the felony-firearm charge. There was sufficient evidence unrelated to the possession of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 327.
  81 Am Jur 2d, Witnesses §§ 569, 571.
[2] 40 Am Jur 2d, Homicide §§ 44, 53.
[3] 76 Am Jur 2d, Trial §§ 1156, 1157.
  Inconsistency of criminal verdict as between different counts of indictment or information. 18 ALR3d 259.
[4] 21 Am Jur 2d, Criminal Law § 167.
  76 Am Jur 2d, Trial § 1158.
[5] 5 Am Jur 2d, Arrest §§ 48, 49.
[6] 29 Am Jur 2d, Evidence § 590.
[7] 81 Am Jur 2d, Witnesses § 478.
[8] 63 Am Jur 2d, Prosecuting Attorneys § 29.
[9] 29 Am Jur 2d, Evidence §§ 433-436.
  Admissibility, in criminal prosecution, of evidence secured by mechanical or electronic eavesdropping device. 97 ALR2d 1283.
[10] 29 Am Jur 2d, Evidence §§ 708, 731.
[11] 29 Am Jur 2d, Evidence § 494.
  30 Am Jur 2d, Evidence § 1103.
  Consideration, in determining facts, of inadmissible hearsay introduced without objection. 79 ALR2d 890.
[12] 75 Am Jur 2d, Trial § 116 *et seq.*
  Remarks or acts of judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal. 62 ALR2d 166.
[13] 29 Am Jur 2d, Evidence §§ 320, 333.

firearm used in the crime by the defendant's accomplices to support the defendant's conviction as an aider and abettor to the commission of the murder.

3. The police had probable cause to arrest the defendant and his arrest was not unlawful.

4. Since the evidence on the issue of whether the defendant's confession was voluntarily made was conflicting, the Court of Appeals deferred to the trial court's findings on that issue because the resolution depends solely on the credibility of the witnesses who testified at the hearing.

5. Reversal of the defendant's conviction for second-degree murder is not required due to the prosecutor's calling a witness whom he knew was going to give testimony at the trial inconsistent with her testimony at the preliminary examination. The prosecuting attorney did not offer either version of the witness's testimony as the correct version but merely presented both versions to the jury.

6. The defendant's claim that the prosecutor's questioning of him at the trial concerning a plea-bargaining agreement constituted error requiring reversal is without merit. The evidence was offered to rebut the defendant's testimony on direct examination that the prosecutor offered to dismiss the charges if the defendant agreed to testify against his coparticipants in the crime. Because the defendant injected the issue at the trial, he may not base a claim of error on the prosecutor's further questioning of him regarding the subject.

7. The prosecuting attorney was not and should not have been disqualified from trying the case merely because he had participated in unsuccessful plea-bargaining negotiations with the defendant.

8. Any error that may have resulted from the trial court's failing to suppress evidence of a tape-recorded telephone conversation between a woman with whom one of the coparticipants was residing and the defendant was harmless beyond a reasonable doubt. The statement that the caller made was not incriminating, the caller was not identified as being the defendant and the other evidence of the defendant's guilt was so overwhelming that it could not be said that the alleged error aided in convincing an otherwise undecided juror of the defendant's guilt.

9. The admission of a witness's testimony concerning a statement made by the victim on the night before he was killed was properly admissible as relating to the declarant's then-existing state of mind and was not inadmissible hearsay. The Court of

Appeals is precluded from considering defendant's other claims regarding the admission of hearsay evidence because he failed to object to the admission of such evidence at the trial and manifest injustice would not result from not considering the claims.

10. The trial court's criticism of defense counsel in the presence of the jury does not require reversal. The statements made by the trial court were relatively innocuous and could not have unduly influenced the jury.

11. The search of the defendant's wallet at the police station following his arrest was a valid search incident to the defendant's arrest.

12. The trial court did not err in admitting evidence of the defendant's prior convictions. The trial judge recognized his discretion and weighed the appropriate factors in determining whether to admit the evidence. By considering that the prior convictions were for crimes of violence, the trial judge considered one wrong reason but that does not detract from the conclusion that he properly applied the other appropriate factors in making his decision. The defendant's conviction of second-degree murder should be affirmed.

Affirmed in part and reversed in part.

DANHOF, C.J., concurred. He believed that the trial judge erred in admitting the evidence of the defendant's prior convictions because the trial judge misapplied the factors to be considered in determining whether to admit such evidence, but that the error was harmless because the evidence against the defendant, including a complete confession, was overwhelming and the nature of the defendant's testimony was incredible.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE OF PRIOR CONVICTIONS — IMPEACH-
MENT.

A trial court does not abuse its discretion in admitting evidence of a defendant's prior convictions for impeachment purposes after balancing the appropriate factors for such a determination but also considering an improper factor, *i.e.*, whether the prior convictions involved crimes of violence, where the court did not base its decision solely on the improper factor but properly weighed the appropriate competing factors.

CONCURRENCE IN PART BY DANHOF, C.J.

2. CONSPIRACY — SECOND-DEGREE MURDER.

There is no crime of conspiracy to commit second-degree murder

since such a crime cannot logically exist, it being anomalous to speak in terms of planning to commit a crime which by definition is committed without premeditation and deliberation.

3. CRIMINAL LAW — INCONSISTENT VERDICTS.

The rule announced by the Supreme Court that jury verdicts need not be consistent should not be applied retroactively, and jury instructions in cases decided prior to the announcement of the rule which, consistent with the then-extant law, indicated that jury verdicts must be consistent and that inconsistent verdicts must be set aside unless explained on some rational basis should not be held to provide grounds for reversal on appeal.

4. WEAPONS — FELONY-FIREARM.

Possession of a firearm while committing or attempting to commit a felony is a separate crime from the underlying felony; therefore, where a defendant is charged as an aider and abettor of the underlying felony it is not necessary for the prosecution to establish that the defendant assisted his accomplices in obtaining or retaining possession of the firearm used to commit the felony to convict the defendant as an aider or abettor of the underlying felony and in such a case a verdict of guilty of second-degree murder and not guilty of felony-firearm is not inconsistent (MCL 750.227b, 767.39; MSA 28.424[2], 28.979).

5. APPEAL — ARREST — FELONIES — PROBABLE CAUSE.

A court, in reviewing a claim that a police officer lacked probable cause to arrest the defendant, must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony; each case must be analyzed in light of the particular facts confronting the arresting officer.

6. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS — APPEAL.

An appellate court, when reviewing a trial court's rulings on the voluntariness of a defendant's confession, must examine the entire record and draw its own conclusions; however, if there is conflicting evidence and the determination of voluntariness is largely dependent on the credibility of witnesses, the appellate court should defer to the trial court's findings.

7. CRIMINAL LAW — CROSS-EXAMINATION OF DEFENDANT.

A prosecutor's questioning, even if improper, does not result in reversible error where the questions are asked in inquiring into issues raised by the defendant.

8. Prosecuting Attorneys — Plea-Bargaining Agreements.

A prosecuting attorney is not prohibited from trying a criminal case against a defendant because the prosecuting attorney participated in unsuccessful plea-bargaining negotiations with the defendant.

9. Evidence — Tape Recordings.

Any error that may have resulted was harmless and reversal of a defendant's conviction was not required where the trial court refused to suppress evidence of a tape recording obtained without a warrant of a police-initiated telephone conversation between the defendant and a woman with whom a coparticipant in the crime was residing where the statement that the caller made was not incriminating, the caller was not identified as the defendant, and the other evidence of the defendant's guilt was so overwhelming that it could not be said that the alleged error aided in convincing an otherwise undecided juror of the defendant's guilt.

10. Evidence — Hearsay.

A statement of a declarant's then-existing state of mind which shows the declarant's intent, plan, motive, or design is admissible as an exception to the hearsay rule (MRE 803[3]).

11. Evidence — Hearsay — Appeal — Preserving Question.

Failure to raise objections in the trial court to the admission of alleged hearsay evidence will preclude appellate review absent manifest injustice.

12. Criminal Law — Judicial Criticism of Defense Counsel.

A defendant's claim that the trial court improperly interrupted and criticized defense counsel in a manner which deprived the defendant of a fair trial must be considered in the context of the court's duty to control the proceedings; reversal of the defendant's conviction is not required where the trial court made relatively innocuous statements which could not be said to have unduly influenced the jury.

13. Evidence — Prior Convictions.

*The admission of evidence of a defendant's prior convictions on an improper basis, i.e., because the prior convictions were for "crimes of violence", is not grounds for reversal of his conviction where the error complained of was harmless beyond a reasonable doubt because of the overwhelming nature of the evidence against the defendant, including a complete confession, and the incredible nature of the defendant's testimony at the trial.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Richard J. Card,* for defendant on appeal.

Before: Danhof, C.J., and N. J. Kaufman and D. C. Riley, JJ.

Per Curiam. We agree with Chief Judge Danhof's analysis of all issues in this case except one. We do not believe that the trial court erred when admitting evidence of the defendant's prior convictions. The "crimes of violence" standard used by the trial court is wrong. It appears nowhere in case law or the Rules of Evidence. But the judge did not base his decision solely on this standard. The record shows that the judge recognized his discretion and recognized both the prejudicial and probative elements in admitting evidence of similar crimes. *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978). By announcing that these were crimes of violence, the trial judge announced one wrong reason for admitting evidence of the convictions but this does not detract from the fact that he properly applied the *Crawford* factors in reaching his decision. Thus, the decision was not erroneous, despite the surplusage.

Danhof, C.J. *(concurring).* Defendant was convicted of second-degree murder, in violation of MCL 750.317; MSA 28.549, and conspiracy to commit murder in the second degree, in violation of MCL 750.157a; MSA 28.354(1) and MCL 750.317; MSA 28.549, following a jury trial. He was acquitted on a charge of possession of a firearm during

the commission of a felony. MCL 750.227b; MSA 28.424(2). He was sentenced to serve two concurrent terms of from 18 to 25 years in prison. Defendant appeals his convictions as of right.

Defendant's convictions arose from the shooting death of Rothbe Elwood Perry. Two codefendants, Robert Jackson and Mildred Perry, the victim's wife, were tried in a separate proceeding. See *People v Jackson,* 114 Mich App 649; 319 NW2d 613 (1982); *People v Perry,* 115 Mich App 533; 321 NW2d 719 (1982). Some of the issues raised are identical to those raised in *Jackson, supra; Perry, supra.* With respect to those issues, we reach the same result. Therefore, defendant's conviction for conspiracy to commit second-degree murder is vacated.

Of the remaining issues raised by defendant, none require reversal.

Defendant first complains that his conviction for second-degree murder was inconsistent with his acquittal on the felony-firearm charge. Since the trial in this case took place prior to the Supreme Court's decision in *People v Vaughn,* 409 Mich 463; 295 NW2d 354 (1980), we review the verdict to determine whether it can be explained on some rational basis. *People v Blondell Smith,* 108 Mich App 466, 469; 310 NW2d 425 (1981).

Unlike the situation presented in *Vaughn, supra,* defendant in the present case was charged as an aider and abettor. MCL 767.39; MSA 28.979. In order to convict defendant as an aider and abettor in the murder of Mr. Perry, it was unnecessary to establish that he assisted his accomplices in obtaining or retaining possession of the firearm used to commit the felony. Compare *People v Palmer,* 392 Mich 370, 378-379; 220 NW2d 393 (1974), with *People v Johnson,* 411 Mich 50, 54; 303 NW2d 442

(1981). Our examination of the record discloses that sufficient evidence, evidence unrelated to the possession of the firearm by defendant's accomplices, was established to support defendant's conviction as an aider and abettor in the commission of Mr. Perry's murder. Therefore, we find nothing inconsistent about these two verdicts.

Defendant next complains that the police lacked probable cause to arrest him and that, therefore, his arrest was unlawful and the statements he made following his arrest should have been suppressed. In *People v Potter,* 115 Mich App 125, 134-135; 320 NW2d 313 (1982), the Court stated the following:

"In reviewing a claim that a police officer lacked probable cause to arrest, the reviewing court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony. Each case must be analyzed in light of the particular facts confronting the arresting officer. *People v Harper,* 365 Mich 494, 501-502; 113 NW2d 808 (1962), *People v Ward,* 226 Mich 45; 196 NW 971 (1924)."

At the *Walker*[1] hearing, a police officer testified concerning the facts known to the police at the time defendant was arrested. From that testimony, it is clear that the police had an abundance of evidence from which to conclude that Mrs. Perry had hired at least one black male to kill her husband. In addition, we are convinced that probable cause existed to believe that defendant was that man. Just prior to the shooting, a neighbor heard a woman talking to a man in front of the

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

Perry home. Furthermore, there was evidence that a man named Charlie called Mrs. Perry on the day before the killing. On the day of the killing, a man, who also identified himself as Charlie, called Mrs. Perry's niece and asked for Mrs. Perry. He again called on several occasions following the killing demanding money and threatening violence. The caller left a phone number which was registered in the name of defendant's wife. Defendant was living with his wife at the time of the killing. Furthermore, defendant was known by the name of Charles or Charlie. When Mrs. Perry's niece questioned Mrs. Perry about Charlie, Mrs. Perry told her that Charlie wanted lots of money and instructed her never to repeat that name to the police.

From the foregoing, we conclude that there were sufficient facts known to the police to justify defendant's arrest.

Defendant next complains that the trial court erred in ruling that his confession was voluntarily made. The evidence on this issue was conflicting and resolution thereof depended solely on a determination concerning the credibility of the witnesses who testified at the hearing. Therefore, we defer to the trial court's findings on this issue. *People v Price,* 112 Mich App 791, 797-798; 317 NW2d 249 (1982).

Defendant contends that reversal is required because the prosecutor called a witness who he knew was going to give false testimony. We disagree. The prosecutor called a witness, defendant's niece, who testified at the preliminary examination that defendant told her after the shooting that he drove the getaway car. At trial, the prosecutor first questioned the witness about that testimony. He then brought out the fact that she

recanted that testimony one week after the preliminary examination. She claimed that she testified falsely at the preliminary examination because she wanted to get even with defendant for upsetting her mother. In our opinion, the situation involved here is not akin to the situation involved in *People v Thornton,* 80 Mich App 746, 750; 265 NW2d 35 (1978). In *Thornton, supra,* the prosecutor knew that the testimony being presented was false. Here, although the witness recanted her testimony, the prosecutor could not be sure which version was accurate. Furthermore, since he did not offer either version as the correct version but, rather, presented both to the jury, it is clear that he did not knowingly present false testimony.

Defendant next claims that the prosecutor's questioning of him concerning a plea-bargaining agreement constituted reversible error. We find this issue to be without merit. The evidence was offered to rebut defendant's testimony on direct examination that the prosecutor offered to dismiss the charges if defendant agreed to testify against his coparticipants. The prosecutor's questioning of defendant was designed to prove that the agreement was only to reduce the charge if defendant agreed to testify. It is not clear whether MRE 410 permits a criminal defendant to introduce evidence concerning a plea-bargaining agreement. See *People v Strickland,* 78 Mich App 40, 54; 259 NW2d 232 (1977). However, since defendant injected the issue, he may not now base a claim of reversible error on the prosecutor's further questioning of him about the subject. See *e.g., People v Jansson,* 116 Mich App 674, 693; 323 NW2d 508, 517 (1982).

We also reject defendant's claim that the prosecutor should have been disqualified to try the case

because of his participation in unsuccessful plea-bargaining negotiations. See *People v Lemble,* 103 Mich App 220; 303 NW2d 191 (1981).

Defendant claims that reversal is required because the trial court refused to suppress a tape recording obtained without a warrant of a police-initiated telephone call to defendant from a woman with whom Mrs. Perry was staying after the murder. *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975).

A split of opinion exists among members of this Court concerning whether the rule announced in *Beavers, supra,* as it relates to participant monitoring should be expanded to include the electronic recording of a private conversation where one of the participants consents to the recording. Compare *People v Artuso,* 100 Mich App 396; 298 NW2d 746 (1980); *People v Atkins,* 96 Mich App 672; 293 NW2d 671 (1980); *People v Perry,* 91 Mich App 79; 282 NW2d 14 (1979), with *People v Dubose,* 91 Mich App 633; 283 NW2d 644 (1977), and Judge Danhof's dissenting opinion in *People v Hall,* 88 Mich App 324; 276 NW2d 897 (1979). We find it unnecessary to address this issue because, even assuming that a warrant was required and that no exception to the warrant requirement existed, we cannot agree that the admission of this evidence requires reversal. The statement the caller made was not incriminating. Furthermore, the caller was not identified as being the defendant. Finally, the other evidence of defendant's guilt was so overwhelming that it cannot be said that the alleged error aided in convincing an otherwise undecided juror of defendant's guilt. Therefore, we find that any error was harmless beyond a reasonable doubt. *People v Prast (On Rehearing),* 114 Mich App 469, 489; 319 NW2d 627 (1982).

Defendant's claim that the admission of a witness's testimony concerning a statement made by Mr. Perry on the night before he was killed relating to his plan to leave on a trip was erroneous because it was hearsay evidence is also without merit. The statement related to declarant's then-existing state of mind and was admissible under MRE 803(3). *People v Oaks,* 94 Mich App 745, 751; 290 NW2d 70 (1980).

In the absence of a finding of manifest injustice, we are precluded from addressing defendant's remaining claims concerning the admission of alleged hearsay evidence because defendant failed to object to the introduction of that evidence at the trial. *People v Buschard,* 109 Mich App 306, 310; 311 NW2d 759 (1981). We note that had defendant objected to the admission of this evidence, a curative instruction could have remedied any harm. In any event, our examination of the record discloses no manifest injustice.

We also reject defendant's claim that the trial court's criticism of his trial attorney in the presence of the jury requires reversal. The relatively innocuous statements made by the court cannot be said to have unduly influenced the jury. On the contrary, if the jury was influenced at all, it was as the result of defense counsel's uncalled-for response to the court's remark. Therefore, reversal is not required. *People v Moss,* 70 Mich App 18, 38; 245 NW2d 389 (1976) (M. J. KELLY, J., *concurring).*

Defendant's claim that the search of his wallet at the police station following his arrest was unlawful is also rejected. The search was a valid search incident to defendant's arrest. See *United States v Edwards,* 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974); *United States v McEachern,* 675 F2d 618, 622 (CA 4, 1982).

Defendant finally claims that the trial court erred by permitting the prosecutor to introduce, for impeachment purposes, evidence of his two unarmed robbery convictions, an attempted unarmed robbery conviction, and a felonious assault conviction. The trial court ruled that, because the prior convictions involved crimes of violence, the evidence was admissible.

I agree that the trial court misapplied the factors announced in *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978), and that the evidence should have been excluded. See *People v Williams,* 413 Mich 72, 76; 318 NW2d 462 (1982). However, I do not believe that the error requires reversal. In view of the overwhelming nature of the evidence against defendant, evidence which included a complete confession by defendant following his arrest, and the totally incredible nature of the testimony given by defendant at trial, I find the error to be harmless. *People v Stein,* 90 Mich App 159, 167; 282 NW2d 269 (1979).

Defendant's conviction for conspiracy to commit second-degree murder is vacated. Defendant's conviction for second-degree murder is affirmed.

Affirmed in part and reversed in part.